May it please the Court, my name is Byron Powell and I'm Court Appointed Counsel for the Defendant Appellant Anthony Lawrence. This appeal involves an alleged error in the trial pertaining to the inability of Mr. Lawrence to see or visually observe and participate in the trial pertaining to the jury selection and then the confrontation of witnesses. And then the other issues pertain to the sentencing of the defendant Mr. Lawrence pertaining to the ACC, the Armed Career Criminal Act and the prior record of Mr. Lawrence that was applied to him in the sentencing. I'll first address the vision issue. Some accommodation was made, bringing a screen and things like that. What more should the Court have done? The Court should have done what was asked for and that is permit Mr. Lawrence to obtain glasses. An effort had been made and again the request was made by Mr. Lawrence to complete that process of getting glasses. I find the whole thing sort of odd. Is the proposition here that a blind person cannot be tried for a crime? What if you had a blind person? Well, he could not see. That's right, so he can't be tried for a crime period at the end? Well, no. In this instance, I think we have to look at the law. The law says that a defendant charged with a crime is entitled to confront. So what's the answer to my question? A blind person can't be charged with a crime because he can't see the witnesses. Is that the conclusion that we'd have to draw from your argument? The Court could have easily solved this problem by... But I guess I'm questioning your premise that somebody, because they can't visually see, because of their disability, can't see perfectly the witness or even can't see him at all. I mean, they can see him as well as they can see him, but why is that a constitutional problem? Because it totally blocks the constitutional law. Well, confrontation doesn't necessarily mean eyesight. I'm just thoughtfully repeating what Judge Perzan said. Somebody commits a crime and then, for some unrelated reason, goes blind. According to your argument, he could never confront the witnesses against him. I think that each situation is different because each human being is different. The law remains the same as to the application of the right to confront. I think one could be confronted by somebody who has very bad vision, in the normal meaning of confront. Well, in the case of vision, I think it's critical, if it can be addressed and solved, it would be no different than the inability for the defendant to be in the courtroom for a health issue. Here, he was able to be in the courtroom but could not himself observe, and therefore the issue of confrontation comes into play. And he could not participate, even with the accommodation made by the court, he couldn't participate in the jury selection, and he was not, in reality, able to confront the witnesses. He could not see. As human beings, what's our ability to confront? It isn't just a question, it's to see them with our eyes, and look in their eyes. And without his vision, with his vision disability, he couldn't do that. So is it a small matter that doesn't rise to the level of an error to justify action, action meaning to reverse the ruling of the court? In my experience, he wasn't able to confront his witnesses. If something can't be done that could have easily been done, then the right to confront is meaningless, just meaningless. And I think that's basically what happened here in this courtroom. It was treated as, in fact, a meaningless right of confrontation. The issues on sentencing, there were three issues. Third degree assault, second degree assault, and riot. Third degree assault has been addressed, and is admitted to by the government to be not an issue, that it is not a predicate offense to be used in armed career criminal under the Section 4. So then the next is second degree assault. Now this issue has been ruled on in prior cases, and the issue here alleged by Mr. Lawrence is that the crime of second degree assault that he was, that is in his record, that was used by Judge Nielsen, the mens rea was recklessness. There were no allegations of deadly weapons or any other means. Well, it's the mens rea for the injury, I guess. The assault itself has to be intentional. The assault itself, correct, has to be intentional. A person is guilty of assault in the second degree under circumstances not amounting to assault in the first degree, intentionally assaults another, and thereby recklessly inflicts substantial bodily harm. So it's a hybrid. Yeah, it's kind of an interesting statute because there's intent and then there's recklessness. Recklessness is not intentional. If it's more than negligence, the third degree assault charge, the court ruled that that does not rise to a stature of violence because it's negligence that's involved in third degree assault. And the contention here on behalf of Mr. Lawrence is that this, when we're using LaCalle case and Begay, LaCalle said, Accordingly, we must give the language of 16b and 914e as requiring a higher mens rea than merely accidental reckless or negligent conduct in crimes that traditionally involved the possibility of more closely related active violence. An assault in this specific case is... Under the statute, what about acts like, in terms of the nature of the assault, what about things like poisoning or throwing acid at somebody or something like that, which could hurt somebody, but when you give somebody something to eat that makes them sick, does that count? Well, yeah, I think LaCalle addresses that, stated active violence. I'm asking about the statute. What does the statute cover? The Washington Second Degree Assault Statute. Well, the statute could have said deadly weapon, and it does say that, I mean, second degree assault with a deadly weapon. I'm not asking you that. If somebody gives somebody poison, is that covered by the statute at all? Is that an assault or is it just not one at all? No, I don't believe it is covered by the statute. So, the contention, my contention on behalf of Mr. Lawrence is that the second degree assault under the specific statute that he was, that isn't in his record, that was used as one of the predicate offenses or prior record, is not a crime of violence. I'm not understanding something, first of all. Does third degree assault require an injury at all? I mean, second degree assault under Washington statute. Does the statute require an injury of any kind? Any kind of violence? Does the statute, the second degree assault statute in Washington require that there be an injury? I'm not hearing you. Does the second degree assault statute in Washington require that there be an injury? No. All right, so why are we discussing the injury? The, as I read the statute, it focuses on the issue, it's an issue of violence and it's an issue as to the means of conveying the violence. I would have thought your answer would be, yes, it does require injury, but it requires injury that's reckless. And you don't think reckless injury is enough. The cases, I believe the cases vary as to whether an element of injury was involved. Well, I guess, what does the statute say? Or what's he charged with? Well, under the statute, it's a matter of the element of the statute under the categorical approach. And so under the categorical approach, we're looking at comparing the federal statute with the statute in question to determine whether it's categorically appropriate to use it as a basis to impose additional penalty. But nobody can be convicted of second degree assault if the victim is not hurt at all. The statute requires that the defendant intentionally assaults another and thereby recklessly inflicts substantial bodily harm. There's got to be some harm. Was he, there are a bunch, that's A and then there are a bunch, then there's B, C, D, E, F, and G. Was he specifically charged with A and convicted of A? Do we know that? Yes, reckless. He was charged with reckless. With intentionally assaulting another and thereby recklessly inflicting substantially bodily harm. That's subsection of the second degree assault statute, not any of the others. Correct. Okay. The, so my position on behalf of Mr. Lawrence is that second degree assault is not, is not, we look at it categorically. Why is that the riot one, which doesn't require that he be armed with a weapon? I just have a minute to address riot. My position on the riot is first, because of the way it's worded with the Washington statute, it's de minimis force. So if you look at it categorically, it's thrown out. What about the fact that he has to be armed with, this person though was convicted of the part of it that requires being armed with a deadly weapon, no? That's the way, the crime of a riot is a class C felony if there's, if the individual's armed with a deadly weapon. Okay. So, but we don't get to that if, unless there's a categorical match. I am confused. Was he, what was he convicted of? Was he convicted of felony riot, meaning that he had to be armed with a deadly weapon? He was charged with felony harassment. Meaning he had to be, but he was convicted of felony riot. And then he pled guilty to felony riot. Which required that he was armed with a deadly weapon. The allegation was. That wasn't the allegation, it was an element of the felony part of it. The element is armed with a deadly weapon. Okay, so we have to take that into account in assessing whether it was categorically a crime of violence. Correct. Okay, so the question is why if he was armed with a deadly weapon, it's not categorically a crime of violence? Because the, reading the statute, it requires de minimis force. It is not a crime. But there's not a threat if he's running around with a, a threat of force if he's running around with a deadly weapon? The, the way the statute reads, I do not believe we get to that issue when we compare it categorically. Because it's a de minimis, the intent is a de minimis intent. Okay, you can reserve some time. Thank you very much. I mean, you're not reserving time, but we'll give you a minute or so. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Russ Smoot, and I'm an assistant with the Eastern District of Washington. I am here on behalf of another assistant in the office, Mr. Ahmed, who was trial counsel and did prepare the written brief in this matter. I would indicate to the Court I've reviewed the briefing, reviewed some, the relevant case law. I believe I'm in a position to answer the questions that the Court has on the issues. And if, if I'm stumped, so to speak, I would offer to provide a briefing upon returning to the office. I know that the Court asked a number of questions of counsel during the defendant's presentation. And I guess I would wonder if the Court at this point has quite specific questions to the government. Well, it would be really helpful to know exactly what Washington statutes we're dealing with and what they say. My understanding is that, let's begin with my understandings, which are that he was convicted of the subsection of the Second Degree Assault Statute that says intentionally assaults another and, therefore, erectly inflicts substantial bodily harm. Was he specifically convicted of that subsection? Your Honor, I have to say, Your Honor, that I'm not sure exactly which subsection it was. Whether it was, in fact, subsection A, I would indicate, Your Honor, that the government's position is that subsection A does require an intentional assault rather than some reckless conduct that ultimately turns into an assault. Yeah, but an intentional assault could be spitting on somebody and has been under Washington law. So it's not just a theoretical problem. Correct. However, the indication also is that... But it would certainly be helpful to know whether that's the only subsection we're dealing with or whether he was generally convicted of second degree assault. We have to deal with all the subsections. No one seems to know the answer to that question. I don't know. Is that the answer? I apologize. I don't have the exact subsection. I can provide that. You see why it matters. Because with regard to the categorical approach, we have to know whether we're dealing with one subsection or all the subsections. Well, Your Honor, I'm not sure that it does in this case. I think because I believe it's the intentional assault and that there is bodily injury caused through this intentional assault. I think that perhaps... But we don't know whether that's what he was convicted of. We then have to deal with all the subsections to see what else he might have been convicted of because we don't know. So we need to know whether we know what he was convicted of and we don't know. Your Honor, the government's position would be that it would apply categorically under all subsections. But then we analytically would have to go through all the subsections, which I, for one, have not done, to see whether all of them are categorically.   is whether he was convicted of bodily injury within the violent crime. And therefore, it matters whether he was convicted of only one subsection or just generally the statute. Yes, Your Honor. I understand the Court's position and I guess... It's not a position. It's in fact what we need to do. So therefore, we need to know what he was convicted of. But we'll figure that out hopefully. Go ahead. In response, Your Honor, I would indicate that the Jenin case addressed this very issue under subsection G, or excuse me, subsection C, which simply says assault with a deadly weapon. And from my reading of the statute, subsection C, which doesn't indicate any bodily injury but is assault with a deadly weapon, that the Ninth Circuit, another panel, has already determined that that position, that particular subsection, is in fact qualifies as under the categorical approach as a crime of violence. So therefore, there's a case where there's no injury even caused or no element of injury, and the Ninth Circuit has found already that that's categorically included in the Jenin case. In terms, Your Honor, of... I know that the question was raised concerning the riot conviction, and I would indicate that the reason why the modified approach is applied in a riot, in a felony riot circumstance, is that under the riot statute, a force can be used against either a person or property, and thus the inclusion of property places it outside of the categorical approach. In this case, according to the... As I've gone through the briefings, this case, the riot went to the categorical approach, and the documents that are... What is riot? What does riot mean? Well, riot is defined by statute in the revised Code of Washington as a person is guilty of the crime of riot if acting with three or more other persons, he or she knowingly and unlawfully uses or threatens to use force or in any way participates in the use of such force against any other person or against property. And that's subsection 1. Down to subsection B, it indicates that the crime of riot is a Class C felony if the actor is armed with a deadly weapon.  In this case, at sentencing, the district court found that riot was, in fact, a crime of violence using the modified categorical approach because in the documents provided to the court, specifically the defendant's statement upon plea, the defendant, rather than write his own statement, the defendant checked the box that the court could consult or could review the police reports in determining the factual basis for the plea. Within those reports... So do we know under Washington law whether the armed with a deadly weapon part of the felony riot statute means that the weapon has to be seen or could be in your pocket? I don't know that. It appears that based on the police reports, the defendant made statements, as counsel noted, that the defendant was initially charged with telephone harassment and the statements which are set forth in the briefing were that he was going to get, I believe, his heat and come over there. So whether or not the defendant, whether or not a victim needs to necessarily see... The actual facts don't sound like they have anything to do with riot and this is one of the reasons why the modified categorical approach has to be narrow because what he actually did doesn't even seem to fit the facts of riot. Your Honor, I would indicate that this was somewhat brought up by the defendant in his brief and I would note that it wasn't specifically answered in the government's brief, but this does occur in convictions of riot where a defendant in the state of Washington is charged with one particular offense and ultimately through plea negotiations, the defendant has pled to riot and accepted that conviction. Yeah, but that's exactly why we can't look at the underlying facts because the underlying facts don't even fit. We have to look at what he was convicted of and not the underlying facts. Well, I think the problem is that there's two issues here involved. One of the issues is whether or not the district court or, excuse me, the court of Washington State found that the underlying facts were enough to accept the plea and thus establish the conviction of riot. And secondly, whether or not a defendant's claim that the facts don't meet the crime later in a federal... I'm not suggesting that, but I am suggesting that we therefore have to stick pretty closely to the elements of the crime and not to the underlying facts because if we start looking at the underlying facts, our likely conclusion is this isn't it anyway. And we certainly... And I understand why they don't match. You gave the reason, but that's why we have to look at the conviction and not the facts. Correct. So therefore, what we know about what actually happened is kind of irrelevant. Well... Because the crime doesn't require that any of those things have happened. In other words, you say that he called up and said he was threatening to come with the heat. That's not the question. The question is what does the statute require when it says armed with a weapon? I don't know what the Washington statute requires, whether or not the weapon... whether the threat of being armed with a weapon or the actual being armed and the weapon or whether or not a victim even sees the weapon is relevant to the conviction of riot in Washington State. One other question. There is a case as to which there is an unbanked petition pending called United States v. Terrell. Are you aware of it? Which has to do... It's another Washington case, by the way, but it has to do with this question of how likely the nonconforming applications have to be. And I don't know... My question really is whether you think... whether your argument in this case depends on concepts having to do with how likely the application of the statute to noncrimes of violence is, and if so, do we have to hold the case for Terrell? But maybe you don't know enough about Terrell to know the answer. I don't know the particulars of that case, Your Honor. Okay. My position in argument is that, first, that under any subsection of the second degree assault... I checked, by the way. There's only one that's been argued in both briefs, and it's the one that says you intentionally assault and recklessly cause injury. It appears from now looking at the pre-sentence report that that... But it would be helpful if you know that. Okay. I apologize for not being prepared with that question, Your Honor. Does that qualify if the injury is recklessly inflicted? The United States position is that it would, because it's an intentional assault. It is... It resulted in substantial bodily harm. But what about the fact that the intentional assault doesn't have to be... wouldn't qualify by itself. Do you agree about that? Under different assault statutes, correct. The government conceded in its brief that an assault of the third degree didn't qualify. An intentional assault. Whether the assault was intentional won't help. I don't know that I would agree, Your Honor, because, again, this is a situation to where... Well, what about the spitting example? Would that qualify? As an assault? No, as a violent felony.   If it wouldn't fit, it would fit. It wouldn't fit into the category of whether there was a threat of harm or a risk of harm. In other words, the assault... My understanding is that there are Washington statutes that say that that would qualify as an intentional assault in Washington. Is that correct? I don't know the specifics of all of the Washington case law. Suppose you have a statute saying it's a crime to commit an intentional assault resulting in serious bodily injury. Is that a crime of violence? I believe it would be. Okay. We don't know what the level of intent is for the resulting in serious bodily injury. We do know we've got an intentional assault. And we do know that there is a requirement of injury. And the resulting is kind of a neutral term. It doesn't say what the intent was for the injury. I don't necessarily disagree with your answer. I'm just speculating on what happens then when we say it's a crime if you commit an intentional assault that recklessly inflicts injury. You've named an intent when maybe you didn't have to. But the intent that you name is recklessness. If I understand your argument, it doesn't matter what the intent was. You've got an intentional assault. And you've got a requirement of injury. And it really doesn't matter what label you stick on the injury. Well, I think, Your Honor, that the recklessly part is maybe the result of the intentional assault as opposed to necessarily a state of mind. But our problem is what makes this a violent felony, right? That's ultimately what we're coming to, right? And we know that violence has certain characteristics under the Supreme Court case law, that it has to be active violence, right? And the question is how the resulting injury supplies the ‑‑ informs the force so as to make the force the kind of force that becomes violent force. So how do you connect those things? I apologize, Your Honor. I don't know that I necessarily understand. All right. I guess my premise going in, which you didn't quite agree with either, is that intentional force itself isn't enough. Because the force that Washington State would recognize as force wouldn't meet the violent crime, the violent felony statute, because it would include things that aren't violent. Like touching somebody or spitting on somebody or something like that, right? You're not willing to agree with that either, as I understand it, because you don't know what the Washington statute covers because you haven't read the case law. I mean, is that basically where we are? I haven't read specific Washington State cases. Well, maybe you should have before you came in. Excuse me? Maybe before you came in here you should have, so you might have known what the statute was that we're dealing with. It's not just a question of the words. It's a question of how it's applied. Well, in this case, Your Honor, whether or not the court never applied a modified categorical approach. At sentencing, the court determined that this was a categorical crime of violence to begin with. Right. And I'm trying to find out why it's a categorical crime, which requires reading the Washington statutes to know what they think intentional force means. But since you haven't done it, we're not going to get any place. So therefore, I think that your argument is over. Thank you. Your Honor, I would. The matter of the second degree assault, the charge was intentional. Intentional. It's set out in my brief. If a person is guilty of assault in the second degree, if he or she, under circumstances not amounting to assault in the first degree, intentionally assaults another and thereby recklessly inflicts substantial bodily harm. That was the statute that is in his record that he pled guilty to. That was found to be a categorical fit for the. I guess, how much emphasis should we put on thereby? Intentionally assaults another and thereby recklessly inflicts substantial bodily harm. The substantial bodily harm has to come from the intentional assault, doesn't it? And thereby? Well, it's a connector, obviously, and it connects the intent with what happens. And what happens isn't what was intended. Because reckless is not intentional. Yeah. I see your point. It's an interesting word in the statute. And so it's not an active, it's not active violence. Okay. Thank you very much. Thank you. Thank you to both counsel. The case of United States v. Lawrence is submitted. Is there an opportunity from briefing that I may correct the record? As to? Well, I missed, I didn't answer the question correctly. And rather than provide more argument, I would like to indicate that I did read the definition of the statute. And the definition of Washington State assault is in the government's brief. I apologize if I misunderstood. It was impeding because you couldn't get to the next question if we couldn't answer the first one. All right. Thank you.
judges: Canby, Thompson, Berzon